**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**
**CIVIL CASE NO. 2:09cv027**

| | |
|---|---|
| **RICKEY MCDONALD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Attorney's Fees Under the Equal Access to Justice Act and the Social

Security Act. [Doc. 14].

**I.      PROCEDURAL HISTORY**

The Plaintiff Ricky McDonald initiated this action on April 29, 2009,

seeking review of the denial of his claim for benefits by the Defendant

Michael J. Astrue, Commissioner of Social Security ("Commissioner")

under the Social Security Act. [Doc. 1]. The Commissioner filed an

Answer to the Plaintiff's Complaint on August 21, 2009. [Doc. 7].

Thereafter, the Plaintiff filed a motion for summary judgment on the basis of

the administrative record. [Doc. 9]. The Government in response

consented to remand. [Doc. 11]. On December 2, 2009, the Court entered an Order remanding the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). [Doc. 12].

The Plaintiff now moves for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA") in the amount of $6,414.25. The Plaintiff further requests that the Court allow him 30 days after being served with notice of an award of past-due benefits to file for fees pursuant to the Social Security Act, 42 U.S.C. § 406(b). [Doc. 13]. In response, the Government states that the parties have agreed to the amount of $6,063.00 for attorney's fees to be made payable to the Plaintiff by the Social Security Administration and reimbursement for costs of $350.00 for the initial filing fee from the Judgment Fund, in full settlement and satisfaction of any and all claims for attorney's fees pursuant to the EAJA. [Doc. 16].

## II. ANALYSIS

Under the EAJA, the Court must award attorney's fees to a prevailing party in a civil action brought against the United States unless the Court finds that the Government's position was "substantially justified" or that "special circumstances" would make such an award unjust. 28 U.S.C. § 2412(d)(1)(A). Because the Court ordered this case be remanded to the

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), the Plaintiff is properly considered a "prevailing party" in this action. <u>See</u> <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993).

In the present case, the Commissioner consents to the Plaintiff's particular request for fees. In light of the Court's prior remand of this matter, and in the absence of any contention by the Commissioner that its position was substantially justified or that special circumstances exist that would render an award of attorney's fees unjust, the Court concludes that the Plaintiff is entitled to an award of attorney's fees under the EAJA.

Having determined that the Plaintiff is entitled to an award, the Court now turns to the issue of the amount of fees to be awarded. The parties have agreed that the Plaintiff should be awarded a total of $6,063.00 in attorney's fees and $350 in costs. In support of this request, the Plaintiff submits documents showing the Consumer Price Index for March 1996 and November 2009, respectively, as well as affidavits of counsel and billing records detailing the hours claimed by attorneys and paralegals in preparing this case. [Docs. 15-1 to 15-5].

Under the EAJA, an award of attorney's fees must be "reasonable," both with respect to the hourly rate charged and the number of hours

claimed.  See Hyatt v. Barnhart, 315 F.3d 239, 248 (4th Cir. 2002) (quoting

28 U.S.C. § 2412(d)(2)(A)(ii)).  The Court has broad discretion to determine

what constitutes a reasonable fee award.  See 28 U.S.C. § 2412(b); May v.

Sullivan, 936 F.2d 176, 177 (4th Cir. 1991) (per curiam).

With regard to an attorney's hourly rate, the EAJA provides, in

pertinent part, as follows:

> The amount of fees awarded . . . shall be based upon
> prevailing market rates for the kind and quality of the
> services furnished, except that . . . attorney fees shall
> not be awarded in excess of $125 per hour unless the
> court determines  that an increase in the cost of living
> or a special factor, such as the limited availability of
> qualified attorneys for the proceedings involved,
> justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).  The decision to grant an upward adjustment

of this statutory cap is a matter within the Court's sound discretion.  Payne

v. Sullivan, 977 F.2d 900, 901 (4th Cir. 1992).

The Consumer Price Index data published by the Bureau of Labor

Statistics reflects that the cost of living increased from 155.7 in March

1996, the date that the statutory rate of $125 per hour was established, to

216.330 in November 2009, the date of the Court's Judgment remanding

this case, an increase of 38.9%.  The Court finds that this increase in the

cost of living justifies a corresponding increase in the hourly rate for

attorney's fees in this case.  The Court further finds that this higher hourly

rate is consistent with the prevailing market rates for services charged by lawyers of similar talents and experience in this District. Accordingly, the Court concludes that an award of attorney's fees in this claim is reasonable when based upon an hourly rate for attorney work of $173.68.

The Plaintiff also claims fees for paralegal services performed at the hourly rate of $65.00 per hour. Plaintiff must prove that the claimed hourly rate for this work is in keeping with "prevailing market rates" for paralegals in this District. <u>See</u> <u>Richlin Sec. Serv. Co. v. Chertoff</u>, 553 U.S. 571, 128 S.Ct. 2007, 2012, 170 L.Ed.2d 960 (2008). In this District, paralegal services have been compensated for a significant period at a rate of $65.00 per hour. Review *sua sponte* of the length of time this has been the customary rate indicates that an increase is in order. The Court concludes that a rate of $70.00 per hour is reasonable.

We now turn to the question of the analysis of the hours claimed for payment. In this matter, the Court has only received notice of one attorney for Plaintiff: Russell Bowling. Mr. Bowling is admitted to and is in good standing with this District. Mr. Bowling has included in his motion a claim for services of another attorney, Charles L. Martin, whose claim in turn includes a claim for the services of attorney Perrie Naides. The results yielded by the services described, in the form of the Plaintiff's summary

judgment brief and ultimately the successful securing of a remand for the Plaintiff, is a testament to the quality of the work of all who contributed. Nevertheless, it remains that neither Mr. Martin nor Ms. Naides have entered notice of appearance in this case, neither is admitted in this District or licensed to practice law in this state, and neither has been the subject of a *pro hac vice* admission application or fee payment. The case having been filed in early 2009, ample time for attending to these important matters has passed. It is the responsibility of counsel to know and follow the local rules. Their noncompliance with the District's local rules is a special circumstance under the EAJA, rendering an award unjust.

Between the time Plaintiff's instant motion was filed and this Order was drafted, the Court came to see a pattern in the way that attorney Martin participated in virtually every case where attorney Bowling was counsel of record, dating back to at least 2004, and in cases of other admitted attorneys as well. The Court then became aware of warnings and denials of fees issued to counsel who sought fees for Mr. Martin's similarly-administered services by several courts in the District of South Carolina[1] dating back to May of 2008. As such the Court is confident that Mr. Martin

---

[1]All of the following references are to cases in the District of South Carolina. Warnings: 9:07-cv-00546, 5/9/08; 0:06-cv-02255, 7/24/08; 8:06-cv-03610, 04/09/09; 0:07-cv-01424, 5/13/09. Denials: 8:07-547, 2:07-1621, and 3:07-3785, 7/29/09; 6:08-546, November 24, 2009.

knew the risks of disregarding this Court's *pro hac vice* admission rules in enacting essentially the same style of participation without admission in this case (which was filed after he had received several warnings in South Carolina).

It is the obligation of this Court to participate in the regulation of the practice of law in this District. In Re G.L.S., 745 F.2d 856 (4th Cir. 1984), Rule 83, Fed. R. Civ. P., LcvR 83.1. Acting on that obligation protects the citizens of this District from "quality control problems" enabled by the routine exercise of significant influence over local cases by persons over whom no local authority otherwise can assert credentialing, service of process, and discipline. Hon. G. Ross Anderson, Jr., "Renting Your Law License Can Be Dangerous: Avoiding the Rubber-Stamp Mentality Surrounding *Pro Hac Vice* Admissions," South Carolina Lawyer, March 2010, p. 33, Sanders v. Russell, 401 F.2d 241, 245 (5th Cir. 1968).[2]

The Court addressed the above-referenced pattern in another case in this District, ultimately resulting in attorney Martin's obtaining *pro hac vice* admission to this Court in seven cases where his name appears on the

---

[2]That obligation is not impacted by whatever reaction opposing counsel may offer to the acts of another purporting to serve as counsel in a matter, since any such offer would be made by opposing counsel in his/her status as an attorney, and would not be an obligation of Defendant in its role as litigant. Sandoval, nt. 8.

respective Plaintiff's brief.  Those seven cases are newer than this case, and attorneys Bowling and Martin were alerted that future *pro hac vice* admission requests were unlikely to be granted.  However, due to the age and advanced progression of this case, for the smooth administration of justice, *pro hac vice* admission will not be required here before Plaintiff's instant motion can be ruled upon.  Under the circumstances presented in this case, however, neither attorneys Martin and Naides can be treated in the same manner as admitted attorneys.

In a different matter before this Court, the plaintiff's attorney of record sought a hearing, and attorney Martin appeared.  There, attorney Martin personally addressed concerns presented by his pattern of participation in Social Security cases in this District.  Notably, he discussed the strong appearance that rather than working solely as a brief-writer for admitted attorneys at their behest, he might be creating relationships with admitted attorneys that equate to providing "a legal conduit through which [Martin and his associates are] attempting to practice in this court without seeking admission to the Bar or *pro hac vice*," an arrangement condemned in Humphrey v. Apfel, No. 1:98-CV-162-C (N.D.Tex. July 2, 1999) (Koenig, J.)

(quoted in Sandoval v. Apfel, 86 F.Supp.2d 601, 607 (N.D.Tex., 2000))[3]. The Court understands attorney Martin's responses as describing a relationship wherein he, an unlicensed person, provides legal services to lawyers.

Returning to the question of the calculation of the fee, since Martin and his associates were never admitted to serve as counsel in this matter they cannot be paid as attorneys. They can, however, be paid as paralegals, as they performed services in support of the licensed attorney of record for the Plaintiff (Bowling). The rate at which paralegal services are to be compensated has been addressed above, and set at $70.00 per hour. It is that rate at which the services of Martin and his associate will be paid. This recasts 27.3 of the hours Plaintiff has categorized as attorney time, to paralegal time, which amount the Court finds to be reasonable.

Based upon a reasonable hourly rate of $173.68 per hour for 3.65 attorney hours expended and the reasonable hourly rate of $70.00 per hour for 30.45 paralegal hours expended, the Court concludes that a total fee award of $2,765.42 is justified.

---

[3]The Court specifically notes that important distinctions exist between these facts and those in the <u>Humphrey</u> and <u>Sandoval</u> cases.

Finally on this topic, the Court appreciates and expects the continued candor of attorney Bowling, a member of this Bar, in revealing the status of each person performing work on his clients' claims. Sandoval at 605. It was this consistent transparency that aided the Court in reviewing and understanding the pattern, facilitating its efforts toward a fair means of addressing its obligation to regulate practice in this District, the need for citizens to have access to legal representation in specialty areas, and the desire of that counsel to be fairly compensated.

Next, the Plaintiff requests that the fee award be paid directly to his attorney, pursuant to an assignment he made of such fees. [Doc. 18].

Recently, a split[4] among the federal circuits over a custom of EAJA fees being awarded directly to a prevailing party's attorney was addressed by the U.S. Supreme Court in Astrue v. Ratliff, 560 S.Ct.—, 2010 WL 2346547 (June 14, 2010). The Court clarified that the "prevailing party"

---

[4]The 4th, 10th and 11th Circuits held that EAJA fees are payable only to the prevailing claimant, and thus, such fees are subject to administrative offset for any other non-tax debts that the claimant owes to the Government. See Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009), Reeves v. Astrue, 526 F.3d 732, 738 (11th Cir.), cert. denied, 129 S.Ct. 724, 172 L.Ed.2d 730 (2008); Manning v. Astrue, 510 F.3d 1246, 1252 (10th Cir. 2007), cert. denied, 129 S.Ct. 486, 172 L.Ed. 355 (2008). The 6th and 8th Circuits had held that EAJA fees may be awarded directly to the prevailing party's attorney and cannot be used to offset the claimant's debt. See Ratliff v. Astrue, 540 F.3d 800, 802 (8th Cir. 2008), cert. granted, – S.Ct. –, 2009 WL 1146426 (Sep. 30, 2009); King v. Comm'r of Soc. Sec., 230 F. App'x 476, 481 (6th Cir. Mar. 28, 2007).

entitled to benefits under the EAJA is the claimant, not his attorney.  Ratliff at *4-7.

The government responded to Plaintiff's request, which was made before the Ratliff ruling, by negotiating an agreement with Plaintiff.  The parties propose that after a reasonable period for determination whether Plaintiff owes an offset-qualifying debt, if the Plaintiff does owe such a debt, the EAJA fees would be applied first to satisfy the debt and then, made payable to Plaintiff, mailed to counsel.  If there is no such debt, Plaintiff's assignment of EAJA fees will be honored via a direct payment to counsel.

The Court does not read Ratliff as precluding a payment arrangement such as the one the parties have suggested.  Two cases in the Western District of Virginia have honored such fee assignments after Ratliff, by ordering that counsel be the direct payee of EAJA fees.  Hinkle v. Astrue, 2010 WL 3909916 (W.D.Va.,2010), Powers v. Astrue, 2010 WL 2772660 (W.D.Va.,2010).  Other cases around the country have held likewise in the five months since the Supreme Court's decision.[5]

---

[5]Beshears v. Astrue, 2010 WL 3522469 (W.D.Ark. Sep. 2, 2010) (pursuant to Ratliff "these fees must be awarded to Plaintiff, not to Plaintiff's attorney ... [h]owever, if Plaintiff has executed an assignment to Plaintiff's counsel of all rights in an attorney fee award, and if Plaintiff owes no outstanding debt to the federal government, the attorney fee award may be awarded to Plaintiff's attorney");  Patterson v. Commissioner, 2010 WL 3211139 (N.D.Ohio Aug. 11, 2010) (directing payment to the lawyer where there is an assignment in contract-"In such a case, the payment of an EAJA award directly to plaintiff, a party who no longer holds any legal right to such an award, is without legal

In addition, the chronology of this case and the particulars of the parties' agreed schedule are distinguishable from the facts in Ratliff. The issue in Ratliff was whether the application of the set off rule was mandatory in the face of a fee assignment. It did not address the question of whether the government could honor assignments in the absence of such debt. The cases that have analyzed the affect of Ratliff on assignments in the five months since the Supreme Court's decision treat the government's offset obligations and attorneys' rights under assignments as competing but not entirely incompatible interests.

The proposed mechanism for payment harmonizes those interests. Its "if-then" approach fully covers the requirements of Ratliff, should an

---

justification. Rather, the award should be paid directly to the party to whom plaintiff has assigned the right to receive the award, the plaintiff's attorney. Moreover, to do otherwise would run the risk of unnecessary litigation if plaintiff, upon receiving an award to which plaintiff is no longer entitled, refuses to give that award to plaintiff's attorney despite a contractual assignment of the award"); Castaneda v. Astrue, 2010 WL 2850778 (C.D.Cal. July 20, 2010) ("The Court concludes that in light of the assignment, the amount awarded herein, subject to any legitimate offset, should be paid directly to Plaintiff's counsel."); Watson v. Astrue, 2010 WL 2903955 (W.D.La. July 19, 2010) ("While Ratliff makes it clear that the attorney fee award is the property of the plaintiff, the prevailing party, counsel also has an interest in ensuring her nonstatutory fee rights are satisfied. Therefore, the undersigned will order the fees be made payable to both counsel and claimant. Counsel for the Commissioner has been contacted and has no objection to the award being issued in both counsel and claimant's names."); Booker v. Astrue, 2010 WL 2771875 (S.D.Ind. July 13, 2010) ( [claimant's attorney] attached an assignment to her reply ... and the Government did not challenge its validity. Therefore, the Government shall pay the EAJA fee award directly to [claimant's] attorney."). Other cases have held to the contrary. Johnson v. Astrue, 2010 WL 4094360 at *2 (E.D.Ark, 2010).

offset-qualifying government debt turn out to exist. The proposal's inclusion of direct payment to counsel if there is no debt honors the assignment interest and does not appear to be precluded by Ratliff.

There is nothing in Ratliff to indicate that it is intended to divest the government of its discretion to enter into direct payment arrangements where there is no debt to the government or where funds remain after satisfaction of such debt.[6] *See* Ratliff, 130 S.Ct at 2530. Subsequent cases have made that observation. Preston v. Astrue, 2010 WL 3522156 at *2 (M.D.Fla.,2010), Boykin v. Astrue, 2010 WL 3339502 at *1 n.1 (S.D.Ala.,2010).

The exact plan that the parties propose here - honoring the assignment through direct payment to counsel if no debt is found to exist - was acknowledged in Ratliff as an agency practice that continued after the offset rule went into effect in 2005. Ratliff, 130 S.Ct. at 2529. No explicit ruling against that practice has been handed down. The Middle District of

---

[6]The concurrence in Ratliff addressed this more directly. It noted that the ruling simply settles in the negative the narrow question whether EAJA *obligates* the agency to make EAJA payments payable to the attorney, as had often been argued theretofore. Ratliff, 130 S.Ct. at 2530 (Sotomayor, concurring). That question is inapplicable here, where no one argues such an obligation. The parties have negotiated their proposed schedule. In addition it recognized the right of litigants to assign their interest in EAJA fees, and that assignments are governed by their terms but not by EAJA. Id., quoted in Johnson v. Astrue, 2010 WL 4094360 (E.D.Ark. 2010). Finally, the concurrence stressed that "[t]he EAJA's admirable purpose will be undercut if lawyers fear that they will never actually receive attorney's fees to which a court has determined the prevailing party is entitled." Id.

Florida has interpreted that acknowledgment an implicit ratification of that practice by the Supreme Court. Collins v. Astrue, 2010 WL 4023545 at *2 (M.D.Fla.,2010), Young v. Commissioner of Social Sec., 2010 WL 3043428 at *2 (M.D.Fla.,2010), Ford v. Astrue, 2010 WL 2991497 at *2 (M.D.Fla.,2010), Davis v. Commissioner of Social Sec., 2010 WL 2871118 at *3 (M.D.Fla.,2010).[7] The Commissioner himself has argued that Ratliff implicitly ratified the practice that the parties propose here. Viator v. Astrue, 2010 WL 2942632 at *1 (M.D.Fla.,2010).

Although some courts have not honored assignments after Astrue, in many of those cases the government contested the validity of the assignment and/or the court was simply disinclined to delve into the logistics of determining whether an offset-qualifying debt existed. Neither of those problems is present here.

The manner of distribution proposed by the parties satisfies the Court that the government will discharge its duty as to the determination in a timely manner, gives some effect to the assignment Plaintiff voluntarily made, and is agreed to by both parties. The Court will not disturb these consensual arrangements, for the reasons discussed above. [Doc. 19].

---

[7]Of the Florida cases, the court did honor the assignment by leaving "to the parties the issue of to whom the fees shall be paid" in one instance (Collins), and did not honor the assignment because nothing addressed the question of claimant's debt status in three instances (Davis, Young and Ford). The parties' proposal provides a mechanism for determining debt status in the case at bar.

Accordingly, the Court concludes that the award of EAJA fees is payable in the manner agreed upon between the parties as reflected in Defendant's Unopposed Motion for Consent Order. [Doc. 19].

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and the Social Security Act [Doc. 14] is hereby **GRANTED** in part, and:

(1)  The Clerk of Court shall enter judgment in favor of the Plaintiff and against the Defendant in the amount of $2,765.42 for attorney's fees awarded pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412(d).

(2)  The Plaintiff is further awarded $350.00 in costs, to be certified by the Office of the United States Attorney to the Department of Treasury for payment from the Judgment Fund.

(3)  Defendant shall inform Plaintiff's counsel whether Plaintiff owes a debt to the government by which this fee award may be offset no later than 30 days from the entry of this Order.

(4)  Within 90 days from the entry of this Order, Defendant shall distribute the sums awarded herein in the manner set out in his Unopposed Motion for Consent Order.  [Doc. 16].

**IT IS FURTHER ORDERED** that in the event that past-due benefits are awarded on remand, the Plaintiff shall have thirty (30) days after being served with notice of the past-due benefits award to file for an award of fees pursuant to the Social Security Act, 42 U.S.C. § 406(b).

**IT IS FURTHER ORDERED** that no additional petition pursuant to 28 U.S.C. § 2412(d) shall be filed.

**IT IS SO ORDERED.**

Signed: November 22, 2010

Martin Reidinger
United States District Judge